IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| THUNDERFOOT,<br><br>Plaintiff,<br><br>vs.<br><br>CVS HEALTH CORPORATION; CVS PHARMACY, INC., both DBA as LONGS DRUGS in Keeau Hawaii; AND TASHA PARKER,<br><br>Defendants. | Civil No. 26-cv-00348-MWJS-KJM<br><br>ORDER GRANTING MOTION TO DISMISS |

## INTRODUCTION

Plaintiff Thunderfoot sues CVS Health Corporation and CVS Pharmacy (doing business as Longs Drugs) and Tasha Parker (collectively "Defendants") raising twenty-one causes of action over a dispute that occurred around May 2025. Defendants move to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). As the complaint does not adequately allege subject matter jurisdiction for some claims and does not adequately allege a basis for relief as to others, the court GRANTS the motion and DEFERS decision on whether to grant leave to amend.

## BACKGROUND

In May 2025, shortly after receiving heart surgery, Plaintiff sought to pick up a prescription drug at Longs Drugs pharmacy in Keaʻau, Hawaiʻi. Dkt. No. 14, at

PageID.154. Plaintiff presented her prescription for the controlled substance, but was advised by pharmacy personnel that, due to a "new CVS policy," they needed to "call [her] doctor" to "verify that [she was] keeping [her] appointments" and ensure she was "not abusing [her] medication." *Id.* Plaintiff objected and left the store. *Id.*

The next day, Plaintiff returned to the pharmacy and spoke with pharmacist Defendant Tasha Parker. *Id.* Plaintiff represents that Parker explained to Plaintiff why she needed to take further steps before dispensing the prescription drug, but after Plaintiff disagreed with the proposed next steps, Parker ultimately said to Plaintiff, "You can leave right now." *Id.* at PageID.161. Plaintiff left without her medication. *Id.*

Plaintiffs then sued CVS Health Corporation, CVS Pharmacy, Inc., Longs Drugs, and Tasha Parker, Dkt. No. 14, at PageID.132, raising twenty-one causes of action rooted in federal and state law. Dkt. No. 1, at PageID.15–19. Defendants moved to dismiss the complaint under Rules 12(b)(1) and 12(b)(6). Dkt. No. 14. Plaintiff filed an opposition to the motion, Dkt. No. 26, along with two addenda, Dkt. Nos. 27–28, and ten inquiries to the court, Dkt. Nos. 29–38. Defendants also filed a reply in further support of their motion. Dkt. No. 44. The court finds the motion suitable for disposition without a hearing, as authorized by Local Rule 7.1(c).

## STANDARDS OF REVIEW

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Subject matter jurisdiction could be established

through diversity jurisdiction under 28 U.S.C. § 1332 or federal question jurisdiction under 28 U.S.C. § 1331. Diversity jurisdiction exists where there is complete diversity of citizenship between all plaintiffs and all defendants, and an amount in controversy exceeding $75,000. *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 67–68 (1996). There is complete diversity when no plaintiff and no defendant is a resident of the same state. *Id.* at 68. Federal question jurisdiction exists when the action arises under federal law. 28 U.S.C. § 1331.

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint. To survive dismissal, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Where, as here, the plaintiff appears pro se, the court liberally construes the complaint and resolves all doubts in plaintiff's favor. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

## DISCUSSION

### A. Subject Matter Jurisdiction

#### 1. Diversity Jurisdiction

The court lacks diversity jurisdiction over the dispute. Diversity jurisdiction involves both a citizenship and an amount-in-controversy requirement, and the absence of either is fatal to jurisdiction. *See Caterpillar*, 519 U.S. at 67–68. Complete diversity requires that all plaintiffs and all defendants be domiciled in different states. *See id.* "[T]he presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action." *Exxon Mobil Corp. v. Allapattah Serv., Inc.*, 545 U.S. 546, 553 (2005).

Here, it is undisputed that both Plaintiff and Defendant Parker are citizens of Hawai‘i. Dkt. No. 44, at PageID.508; Dkt. No. 1, at PageID.5. And while Plaintiff notes that "multiple parties . . . reside in at least three different states," Dkt. No. 33, at PageID.406, *some* diversity among parties is not enough. There is no diversity jurisdiction unless "the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Caterpillar*, 519 U.S. at 68. Regardless of whether multiple parties are citizens of multiple states, complete diversity requires that each plaintiff be a citizen of a different state from each defendant. *Id.* And because that requirement is not met due to the same-state citizenship of Plaintiff and Defendant Parker, the court lacks diversity jurisdiction over Plaintiff's action.

**2. Federal Question Jurisdiction**

Plaintiff's alternative route to establishing subject matter jurisdiction through federal question jurisdiction is also largely unsuccessful. Federal question jurisdiction under 28 U.S.C. § 1331 exists where the plaintiff's well-pleaded complaint raises issues of federal law. *See Louisville v. Nashville R.R. Co. v. Mottley*, 21 U.S. 149, 152–53 (1908). Of Plaintiff's twenty-one causes of action, only seven implicate federal law. Dkt. No. 1, at PageID.11–15. And Defendants' Rule 12(b)(6) motion is persuasive as to each of them: two (Counts 7 and 15) rely on federal statutes that do not provide a private right of action, while the remaining five (Counts 9, 10, 11, 13, and 14) fail to state a claim for relief.

**a. Counts 7 and 15**

When a private plaintiff brings a claim under a federal statute that lacks a private cause of action, there is federal question jurisdiction, but there is no claim for relief. *See Segalman v. Sw. Airlines Co.*, 895 F.3d 1219 (9th Cir. 2018) (affirming grant of Rule 12(b)(6) relief as to claim lacking private cause of action). That is the proper result for Plaintiffs' Counts 7 and 15.

In Count 7, Plaintiff alleges "violations of HIPAA laws by withholding by medication(s), altering dosage of medication, making unlawful and unreasonable demands to obtain my medications, lying to me, etc." Dkt. No. 1, at PageID.12. Yet "HIPAA itself provides no right of action." *Webb v. Smart Document Sols., LLC*, 499 F.3d

1078, 1082–83 (9th Cir. 2007); *see also United States v. Streich*, 560 F.3d 926, 935 (9th Cir. 2009) (Kleinfeld, J., writing separately) (explaining that "HIPAA does not provide any private right of action"). Plaintiffs HIPAA claim therefore fails to state a claim for relief.

The same is true for Plaintiff's Count 15, which alleges "violations of the Federally Controlled Substances Act [("CSA")], and/or Violated Federal Law 21 U.S.C. 802(10), by NOT delivering medication to the user; when they withheld my medications from me, and made unlawful and unreasonable demands upon me for medications." Dkt. No. 1, at PageID.14. For a statute to create private rights, "its text must be phrased in terms of the person benefitted," and even then, "a plaintiff suing under an implied right of action still must show that the statute manifests an intent to create not just a private right but also a private remedy." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283–84 (2002) (cleaned up). The CSA contains no language suggesting that Congress intended to create a private enforcement scheme. Indeed, that the CSA provides for enforcement by the U.S. Attorney General and by delegation the Department of Justice, *see* 21 U.S.C. §§ 871–890, undermines any suggestion that the CSA provides a private right of action for enforcement. *See Alexander v. Sandoval*, 532 U.S. 275, 290 (2001) ("[T]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." (cleaned up)). And while Plaintiff cites specifically to § 802(10) of the CSA, that section also does not create a private right of action. Rather, it merely defines the terms "dispense" and "dispenser." 21 U.S.C. § 802.

The court's conclusion on this issue is consistent with "the district courts within the Ninth Circuit that have addressed it [and] uniformly concluded that the CSA does not create a private right of action." *See, e.g.*, *Sandhu v. Cardinal Health Inc.*, No. 25-cv-03938, 2025 WL 2995007, at *4 (C.D. Cal. Sept. 5, 2025); *Ruggles v. Ige*, No. 16-cv-00304, 2017 WL 427498, at *4 (D. Haw. Jan. 31, 2017) (collecting cases); *Shmatko v. Arizona CVS Stores* LLC, No. cv-14-01076, 2014 WL 3809092, at *2 (D. Ariz. Aug. 1, 2014); *United States v. Real Prop. & Improvements Located at 1840 Embarcadero, Oakland, Cal.*, 932 F. Supp. 2d 1064, 1072 (N.D. Cal. 2013); *see also Durr v. Strickland*, 602 F.3d 788, 789 (6th Cir. 2010) (concluding that no private right of action exists under the CSA); *Welch v. Atmore Comm'y Hosp.*, 704 App'x 813, 816 (11th Cir. 2017) (per curiam) (same).

Because Plaintiffs lacks a private cause of action under either HIPAA or the CSA, Counts 7 and 15 must be dismissed under Rule 12(b)(6).

**b. Counts 9, 10, 11, 13, and 14**

Plaintiff's remaining five federal claims also fail to state a claim for relief under Rule 12(b)(6), not because of a lack of a private cause of action, but because of a lack of sufficient factual allegations. The court addresses each of the claims in order in which they appear in the complaint: Count 9 (ADA Violations under Title III); Count 10 (Civil Rights Act of 1871 and 1964); Count 11 (Antitrust Violations); Count 13 (Rehabilitation Act of 1973); and Count 14 (Affordable Care Act Violation).

Plaintiff alleges that Defendants violated the ADA when they "refus[ed] to accommodate [her] as a disabled person" and "maliciously, wilfully [sic.] and unlawfully obstruct[ed] [her] medical care." Dkt. No. 1, at PageID.12 (Count 9). To state a claim for relief under a Title III discrimination claim under the Americans with Disabilities Act (ADA), the plaintiff must show that "(1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." *See* 42 U.S.C. § 12182(a)–(b); *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).

Even assuming that Plaintiff's health conditions and her possession of "a handicapped placard" qualify her as disabled under the meaning of the ADA, Dkt. No. 1, at PageID. 9, the complaint still fails to make out a claim under the ADA. It makes no factual allegations that Plaintiff was denied any accommodation because of any disability. That is, the complaint does not adequately allege that Defendants' conduct toward her was different compared to non-disabled patients seeking to fill their prescriptions under the same or similar circumstances. Instead, the complaint merely alleges that Defendants "refus[ed] to accommodate [her] as a disabled person . . . [and] obstruct[ed] [her] medical care." Dkt. No. 1, at PageID.12. The complaint's "mere conclusory statements" do not suffice for purposes of 12(b)(6), *Iqbal*, 556 U.S. at 678. Accordingly, Plaintiff, at this stage, fails to state a claim for relief for the ADA claim.

Plaintiff next alleges violations of the Civil Rights Act of 1871 and 1964 (Count 10). Plaintiff's grounds for this claim are that Defendants "endangered my life and health; committed theft, extortion and coercion; withheld my properties; infringed upon my privacies; made unlawful and unreasonable demands upon me; discriminated against me, diminished my happiness, refused to remedy my grievances, etc." Dkt. No. 1, at Page ID.12–13. To the extent that Plaintiff makes claims under 42 U.S.C. § 1983 and 1985(5), she fails to allege the requisite elements for these actions. For instance, for a § 1983 action to prevail, Plaintiff needs to show that Defendants acted "under color of" state law, *West v. Atkins*, 487 U.S. 42, 48 (1988), yet Plaintiff has made no allegation that Defendants' actions constitute state action or that they bear a sufficiently close nexus to the state. So too for § 1985(3), which requires Plaintiff to make an allegation for class-based discriminatory animus for conspiracy. *See Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). And for there to be a plausible violation of the Civil Rights Act of 1964, either under Title II or Title VI, Plaintiff needs to allege that Defendants are one of the enumerated public accommodations (*i.e.*, hotels, restaurants, and theaters), 42 U.S.C. § 2000a(b), or that they are entities receiving federal financial assistance, 42 U.S.C. § 2000d. Because Plaintiff, at this stage, has not pleaded either, Dkt. No. 1, at PageID.12–13, her claims for relief under the Civil Rights Act of 1871 and 1964 fail.

Plaintiff also alleges antitrust violations under the Sherman Act, Clayton Act, and the Federal Trade Commission Act of 1914 ("FTC Act") "due to their monopoly on

the commodities of medications" (Count 11). Dkt. No. 1, at PageID.13. She alleges that Defendants "monopolized [her] medications" such that she "could not receive some of [her] medications from any other pharmacy on the island." *Id.* She also alleges that Defendants "put unlawful demands on [her] where noncompliance resulted in withholding [her] property commodity of medication, which any reasonable person would conclude these things create a monopoly on medication." *Id.*

For Plaintiff to sufficiently plead an antitrust claim, she must allege: (1) a relevant product and geographic market, and (2) an antitrust injury. *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018); *Gorlick Distrib. Ctrs., LLC v. Car Sound Exhaust Sys., Inc.*, 723 F.3d 1019, 1024–25 (9th Cir. 2013). Here, Plaintiff has not identified a relevant product or geographic market. And while the court recognizes the challenges Plaintiff endured to obtain her medication, the record does not show that her difficulty in obtaining the drugs was from an anticompetitive scheme manufactured by Defendants. Rather, the record shows that Plaintiff's difficulty in obtaining the medication from Longs Drugs in Keaʻau stemmed from Defendant Parker's professional judgment relating to Plaintiff's prescription at a single pharmacy location. *See* Dkt. No. 1, at PageID.13. Insofar as Plaintiff struggled to obtain the prescription drugs from other pharmacies on the Big Island, too, the record does not show that this difficulty stemmed from Defendants' conduct. Dkt. No. 3, at PageID.34. And that numerous pharmacies on the Big Island—Shigi Drugs in Hilo, Safeway in Hilo, KTA in Hilo, KTA in Waimea,

CVS Longs in Pahala, Costco in Kona—all independently declined to fill her script undermines Plaintiff's antitrust claim. *Id*. Indeed, one of the pharmacies—one that was not affiliated with Defendants—even commented that while they were willing to accept the script, "filling it might be an issue since the DEA limits the amount that they receive." *Id.* This suggests that Plaintiff's difficulty in obtaining the medication was influenced by factors not related to Defendants' market power. As such, the court concludes that, on this record, Plaintiff fails to state a claim for the antitrust allegations.[1]

Plaintiff alleges "violations [of] the Rehabilitation Act of 1973 via their wrongdoings, as declared throughout this document" (Count 13) and "violations of the Affordable Care Act [("ACA")], as declared with the contents throughout this document" (Count 14). Dkt. No. 1, at PageID.14. In alleging these violations, Plaintiff makes "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Such allegations do not suffice for purposes of Rule 12(b)(6). Furthermore, even if Plaintiff alleged more than "mere conclusory statements," both the Rehabilitation Act and the ACA require the defendant to have received federal financial assistance and the plaintiff to have suffered discrimination based on a protected characteristic, which Plaintiff has not alleged here.

---

[1] Plaintiff fails to sufficiently allege a FTC Act claim, as the FTC Act provides no private right of action. *See N.J. Wood Finishing Co. v. Minn. Min. & Mfg. Co.*, 332 F.2d 346, 351–52 (3d Cir. 1964).

29 U.S.C. § 794(a); 42 U.S.C. § 18116. As such, she has failed to state an Affordable Care Act or Rehabilitation Act claim upon which relief could be granted.

**B. Leave to Amend**

When the court dismisses a complaint, it also generally grants the plaintiff leave to amend where justice so requires, and especially when the plaintiff is a pro se litigant. *See Zemeckis v. Sloan Servicing*, No. 25-cv-00375, 2025 WL 3539141, at *5 (D. Haw. Dec. 10, 2025). But where "it is clear that the complaint could not be saved by any amendment," including where the plaintiff "could not allege any additional facts which might cure defects in the complaint," leave to amend should not be granted. *Id.* (cleaned up).

Because the complaint does not adequately allege jurisdiction as to most claims, and does not adequately allege claims for relief as to the rest, the court DEFERS decision on whether to grant leave to amend the complaint. Instead, the court gives Plaintiff an opportunity to file a letter explaining how, if given leave to amend, she would amend her complaint to sufficiently state a claim as required by Rule 12(b)(6). The letter must set forth the facts that Plaintiff would allege in an amended complaint and do so in a manner that permits the court to understand which facts are relevant to each specific claim. The letter should also address whether Plaintiff would allege facts showing that (1) Defendant Parker refused to dispense Plaintiff's prescription because of Plaintiff's disability (Count 9); (2) Defendants acted "under color of" state law or are

otherwise covered under the Civil Rights Act of 1964 as enumerated public accommodations or entities receiving federal financial assistance (Count 10); (3) Defendants possess market power over the prescription drug that Plaintiff sought to obtain from Defendants (Count 11); and (4) Defendants are covered under the Rehabilitation Act of 1973 and the Affordable Care Act as entities receiving federal financial assistance, and Plaintiff suffered discrimination based on a protected characteristic (Count 13).

The letter need not use formal or legal language, but it must include enough detail to show that Plaintiff could allege the necessary facts to state a claim if granted leave to amend. If Plaintiff cannot allege the necessary facts to state a claim for relief, she may say so and indicate that she would withdraw the relevant claim in an amended filing or seek to dismiss the action altogether. Plaintiff is cautioned that failing to address the specific deficiencies in this order will be considered nonresponsive and may result in automatically dismissing her complaint. Plaintiff is also cautioned that the purpose of this letter is not to correct any terms that the court may disagree with, *see* Dkt. No. 26, at PageID.282, but to cure the specific factual deficiencies identified in the order.

If Plaintiff chooses to submit a letter seeking leave to amend, she must do so by December 23, 2026. Failure to timely file a letter or to set forth sufficient facts in that

letter to provide a basis for granting leave to amend will result in automatically dismissing her lawsuit.

**C. Supplemental Jurisdiction**

Because the court lacks either diversity jurisdiction or federal question jurisdiction, it also lacks jurisdiction over fourteen of Plaintiff's claims—Counts 1, 2, 3, 4, 5, 6, 8, 12, 16, 17, 18, 19, 20, and 21—all of which are state law claims. *See* Dkt. No. 1, at PageID.10–15. Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997). And where "all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) (cleaned up).

Because the dismissed federal claims provide the only basis for federal jurisdiction, the court declines to exercise supplemental jurisdiction over the state law claims and they are, therefore, also dismissed under Rule 12(b)(1). *See Thunderfoot v. United States*, No. 23-cv-00006, 2023 WL 5413852, at *13 (D. Haw. Aug. 22, 2023). If Plaintiff files a letter and the court allows her to file an amended complaint, she may reassert these state law claims in that amended complaint, and the court will revisit whether to exercise supplemental jurisdiction over them at that time.

## CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' motion to dismiss under Rules 12(b)(1) and 12(b)(6), Dkt. No. 14, and DEFERS decision on whether Plaintiff should be granted leave to amend. If Plaintiff wishes to continue pursuing this action, she must submit a letter seeking leave to amend by no later than December 23, 2026. In such letter, Plaintiff must supplement her factual allegations to address the deficiencies that have been identified in this order. Failure to do so will result in her action being automatically dismissed without leave to amend.

IT IS SO ORDERED.

DATED: November 23, 2026, at Honolulu, Hawai'i.

/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge